UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORELL JOHNSON,<br>      Plaintiff<br><br>    v.<br><br>WEXFORD HEALTH SOURCES, INC., *et al.*,<br>      Defendants | No. 23 CV 1595<br><br>Judge Jeremy C. Daniel |

### ORDER

The motions to dismiss filed by Dr. Stephen Ritz and Wexford Health Sources [96], by Dr. Catalino Bautista [98], and by Dr. Timothy Fahy [108], are denied. The plaintiff's motion to strike portions of Wexford's answer [98] is denied in part and granted in part. Dr. Ritz, Dr. Bautista, and Dr. Fahy shall file their answers on or before June 19, 2025. Wexford shall file its amended answer on or before June 19, 2025.

### STATEMENT

This matter comes before the Court on four pending motions. The plaintiff, Lorell Johnson, moves to strike a portion of the defendant Wexford Health Sources's ("Wexford") Answer to his Second Amended Complaint ("SAC"). (R. 98.) Wexford and defendant Dr. Stephen Ritz ("Ritz") move to dismiss the plaintiff's claims which are based on Ritz's conduct. (R. 96.) The defendants Dr. Catalino Bautista ("Bautista") and Dr. Timothy Fahy ("Fahy") move separately to dismiss the claims against them for untimely service of process. (R. 98; R. 108.)

**Summary of Allegations**[1]

The plaintiff, an inmate in Illinois Department of Corrections ("IDOC") custody, "has been suffering from a rare eye disease called keratoconus since at least 2011." (SAC ¶ 2.)[2] Mild cases of keratoconus can be treated with special glasses or contact lenses,

---

[1] This description of the events underlying the plaintiffs' claims is drawn from the complaint and is presumed true for the purpose of resolving the pending motion. *Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

but severe cases are treated by cornea transplant. (*Id.* ¶ 19.) IDOC contracts with Wexford to provide medical care for individuals in its custody. (*Id.* ¶ 3.) In 2016, an outside ophthalmologist (not employed by Wexford) concluded the plaintiff's condition had progressed to the point where a cornea transplant was appropriate. (*Id.* ¶ 25.) Under Wexford's policy, all such recommendations required approval by a Wexford employee before treatment could be carried out. (*Id.* ¶ 18.) Here, Ritz reviewed the recommendation and denied the cornea transplant because Wexford would not pay for it. (*Id.* ¶ 26.)

In 2019, the plaintiff was transferred from Menard Correctional Center ("Menard") to Stateville Correctional Center ("Stateville"). (Id. ¶ 17.) At Stateville, the plaintiff's keratoconus was reevaluated, and an outside doctor recommended another attempt at treating the condition with contact lenses before proceeding with a cornea transplant. (*Id.* ¶ 35.) The defendants "Fahy endorsed these recommendations, then [Dr. Marlene Henze ("Henze")] approved them" under Wexford's review process. (*Id.*) By February 2020, outside doctors again concluded that a cornea transplant was the appropriate treatment for the plaintiff. (*Id.* ¶ 38.) This time, Ritz approved the procedure, and a transplant was scheduled for late March 2020. (*Id.* ¶¶ 39–40.)

The COVID-19 pandemic postponed the scheduled transplant. (*Id.* ¶ 40.) In July 2020, the plaintiff was seen for a pre-operative assessment, but a new outside ophthalmologist saw the plaintiff and recommended an additional attempt to treat his keratoconus with contact lenses. (*Id.* ¶ 42.) Over the plaintiff's objections, Fahy and Henze approved this course of action. (*Id.*) Doctors at the contact lens clinic determined the plaintiff's keratoconus was too severe for lenses and recommended a transplant. (*Id.* ¶ 44.) Nevertheless, the ophthalmologist again recommended contact lenses during another pre-operative assessment. (*Id.* ¶ 46.) This cycle repeated itself for over two years before a different ophthalmologist determined a cornea transplant was necessary, and the plaintiff received the transplant on May 13, 2022. (*Id.* ¶¶ 46–52.) During this time, the plaintiff's condition worsened, causing him severe pain, loss of vision, and falls due to poor vision. (*Id.*) At each step in the cycle, the defendants Fahy, Henze, or Bautista endorsed or approved the circular recommendations of the various outside specialists the plaintiff saw. (*Id.*) The plaintiff further alleges that these same defendants were deficient in providing adequate post-operative care, leading to further complications. (*Id.* ¶¶ 53–60.)

The plaintiff brings a claim under 42 U.S.C. § 1983 for Eighth Amendment deliberate indifference to his medical needs against each doctor defendant for their roles in delaying his cornea transplant from 2016 to 2022. (*See generally id.* ¶¶ 62–95.) He brings a *Monell*[3] claim for Eighth Amendment deliberate indifference to his medical needs against Wexford for the delay as well. (*Id.* ¶¶ 96–103.)

---

[3] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)

2

**Motion to Dismiss by Ritz and Wexford**

Ritz and Wexford move to dismiss Count I, arguing that the plaintiff's claim against Ritz is time barred by both the statute of limitations and the statute of repose. (R. 98.) Wexford further moves, to the extent the plaintiff's *Monell* claim against it is based on Ritz's conduct, to dismiss that portion of the claim as well. (*Id*.)

Section 1983 claims borrow their limitations periods from state law; in Illinois this is two years. *Cesal v. Moats*, 851 F.3d 714, 721–22 (7th Cir. 2017). Illinois law also has a four-year statute of repose for claims against medical providers. 735 ILCS 5/13-212(a). Ritz argues that regardless of the accrual date, any claim against him is barred by the statute of limitations, statute of repose, or both. (R. 102 at 4.) The plaintiff argues that his claim is a continuing violation claim, and as such does not accrue until he received the cornea transplant on May 13, 2022. (R. 100 at 6–7.)

A "continuing violation" is a claim where it "would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). Eighth Amendment deliberate indifference to medical need suits fall into this category of cases because it is "impractical to allocate the plaintiff's pain day by day across the period during which medical treatment was delayed by the deliberate indifference of the defendants to his plight." *Id*. at 320. The cause of action accrues on the last day of a violation, not the first. *Cesal*, 851 F. 3d at 722 (citing *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013)). The last day of a violation in a deliberate indifference suit is either when the plaintiff is treated or when the plaintiff is transferred out of the defendant's care or custody. *Id*; *see also Ajaj v. Fozzard*, No. 23-2219, 2024 WL 4002912, at *3 (7th Cir. Aug. 30, 2024) ("[t]he defendants here could have committed the alleged actions only while [the plaintiff] was housed at USP-Marion"); *Curry v. Wexford Health Sources*, No. 22-CV-1237, 2023 WL 2796477, at *4 (C.D. Ill. Apr. 5, 2023) ("[the p]laintiff received heart surgery on July 10, 2020. Thus, any claim for deliberate indifference . . . based on delayed treatment should have been filed by July 10, 2022").

Here, Ritz argues that the plaintiff's claim against him accrued on one of: (1) March 14, 2017, "the last date of Dr. Ritz' alleged deliberate indifference"; (2) February 1, 2019, when the plaintiff was transferred to Stateville; or (3) "February 18, 2020, when Dr. Ritz approved [the p]laintiff for his cornea transplant." (R. 102 at 4.) The 2017 and 2019 dates cannot be when the plaintiff's claim against Ritz accrued because Dr. Ritz was still involved in the plaintiff's care after his transfer to Stateville— he was the one who approved the initial cornea transplant in 2020. (*See* SAC ¶ 52.) But the 2020 date is not the last day of the violation either. Though Dr. Ritz recommended the plaintiff receive a cornea transplant then, it took another two years and three months for the plaintiff to receive this treatment. (*Id*.) The Seventh Circuit instructs that a continuing violation ends when the plaintiff receives treatment, and that such claims should not be parceled out into separate claims based on discrete events but

3

amalgamated to avoid "multiple suits arising out of the same course of events." *Heard*, 253 F. 3d at 320. Therefore, the plaintiff's claim against Ritz did not accrue until he received surgery on May 13, 2022; the lawsuit was timely brought on March 12, 2023. (R. 1). Ritz's motion to dismiss is denied. Because Wexford's motion to dismiss is based on the claims against Ritz being time-barred, its portion of the motion to dismiss is denied as well.

**Bautista's and Fahy's Motions to Dismiss**

Defendants Bautista and Fahy each move to dismiss under Federal Rule of Civil Procedure 4(m), arguing that they were not timely served. (R. 108; R. 114).[4] As both defendants put it, "[u]nder Rule 4(m), a plaintiff must effectuate proper service on a defendant within 90 days of a complaint being filed, or the court must dismiss the action with prejudice." (R. 108 at 3; R. 114 at 3 (emphasis removed).) But this is not what Rule 4(m) says. If service is not made within 90 days of a complaint being filed, the rule gives the Court discretion to "dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "[I]f the plaintiff shows good cause for the failure [to timely serve process], the court must extend the time for service for an appropriate period." *Id*. Here, the Court repeatedly found good cause to extend the time for recruited counsel to file and serve the Second Amended Complaint. (R. 73; R. 76; R. 84). Bautista and Fahy do not contest that they have been served, but assert that service came so late they will be "extremely prejudiced." (R. 108 at 4–5; R. 114 at 4–5.) However, they do not support these assertions with any facts or argument, and therefore waive this issue. *See Lewis v. Mills*, 677 F.3d 324, 332 (7th Cir. 2012) ("Unsupported and underdeveloped arguments are waived.") (cleaned up). Contrary to their assertions, Bautista and Fahy are not entitled to be dismissed from this lawsuit; neither defendant made a showing of prejudice due to the delay in serving process on them. Accordingly, their motions to dismiss are denied.

**Plaintiff's Motion to Strike**

The plaintiff moves to strike thirty-one paragraphs from Wexford's Answer to the Second Amended Complaint, arguing that these responses do not comply with Rule 8. (R. 98.) Motions to strike are generally disfavored. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir.1989). A motion to strike will only be granted when the moving party can show it will be prejudiced absent its motion being granted. *See Anderson v. Bd. of Educ. of City of Chicago,* 169 F. Supp. 2d 864, 868 (N.D. Ill. 2001). In resolving such a motion, the Court has "considerable discretion." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

---

[4] Though the defendants move separately, their motions are identical in substance and the Court will address them together.

The plaintiff identifies two genera of paragraphs as problematic. First, the plaintiff argues the Court should strike "[p]aragraphs 4–6, 18, 19, 23, 24, 30, 36, 37, 39, 43–45, 49, 51, 54–58, 61," each in the form "Wexford denies the allegations contained in Paragraph No. [X] as they do not completely or accurately describe Plaintiff's alleged medical condition or the treatment rendered thereto." (R. 98 at 3–4 (citing R. 95).) The plaintiff argues these paragraphs do not properly identify which assertions are admitted, and which are disputed. (*Id*.) Wexford argues that these responses are more than sufficient as denials, and in fact "go beyond the requirements of Rule 8(b)(3) [by] explain[ing] why the allegations are generally denied." (R. 115 at 3.) Wexford is correct; these answers suffice as denials of the allegations, and allowing them to stand will not prejudice the plaintiff. This aspect of the plaintiff's motion is denied.

Second, the plaintiff identifies nine paragraphs (22, 25, 26, 41, 42, 46, 48, 50, 53) as problematic because each contains the answer "Wexford admits the allegations. . . to the extent they are consistent with [the p]laintiff's medical records and deny them to the extent they are not." (R. 98 at 4; *id*., n.2.) He argues these answers do not comport with Rule 8, and that Wexford, the entity in charge of his healthcare, has the information to provide proper answers. (R. 98 at 4–5.) The Court agrees. Rule 8(b)(2) requires denials to fairly respond to the substance of the allegation. Denials can be general or specific, and the latter must "specifically deny designated allegations or generally deny all expect those specifically admitted." Fed. R. Civ. P. 8(b)(3). A party can deny part of an allegation or state that it lacks knowledge of information sufficient to form a belief about the truth of an allegation. Fed. R. Civ. P. 8(b)(4). For each paragraph, Wexford purports to admit the portion consistent with the medical records and deny the allegations that are inconsistent with or simply not part of the medical records. That's not a denial as much as a "go see for yourself." It provides no clarity, particularly when one considers that the parties will likely dispute what the medical records disclose. Notably, during argument on the issue, Wexford's counsel failed to identify any language in Rule 8 that supports its view that these responses are sufficient. The aspect of the plaintiff's motion is granted.

Date: May 29, 2025

JEREMY C. DANIEL
United States District Judge